Mary Jo O'Neill, AZ Bar No. 005924
Michael Yeabsley, AZ Bar No. 035244
**EQUAL EMPLOYMENT**
**OPPORTUNITY COMMISSION,**
**Phoenix District Office**
3300 North Central Ave., Suite 690
Phoenix, Arizona 85012
Telephone: (602) 661-0060
Fax: (602) 640-5071
Email:   mary.oneill@eeoc.gov
         michael.yeabsley@eeoc.gov

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Equal Employment Opportunity Commission, <br><br> Plaintiff, <br><br> vs. <br><br> Schuff Steel Company, <br><br> Defendant. | **CIVIL ACTION NO.:** <br><br> **COMPLAINT** <br><br> **(JURY TRIAL DEMAND)** |

## NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of race and national origin and to provide appropriate relief to Charging Party Kyle Barnett and other aggrieved individuals.  As alleged with greater particularity below, Defendant Schuff Steel Company discriminated against Barnett and other aggrieved individuals by

subjecting them to harassment on the basis of race and national origin and retaliating against other aggrieved individuals who engaged in protected activity under Title VII. Schuff Steel's plant manager Travis Bell repeatedly used anti-African American slurs, anti-Hispanic slurs, offensive racial nicknames, and made other racially charged comments in the workplace such as using the word "nigger" and other offensive terms such as "wetback" and "spic." Bell also raised his fist and shouted, "white power!" in the presence of African American and Hispanic employees. Bell also harassed and berated employees for speaking Spanish at work and would verbally harass employees who spoke English poorly. The harassment reached such an egregious level that Barnett and other aggrieved individuals were forced to constructively discharge. Bell also retaliated against aggrieved individuals who complained about his discriminatory harassment.

## JURISDICTION AND VENUE

1.     Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345.  This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.§ 2000e-5(f)(1) and (3) and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2.     The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of Arizona.

**PARTIES**

3.    Plaintiff, the Equal Employment Opportunity Commission, is an agency of the United States of America charged with the administration, interpretation and enforcement of Title VII and is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1).

4.    At all relevant times, Schuff Steel has continuously been doing business in the State of Arizona, and it has continuously had at least 15 employees.

5.    At all relevant times, Schuff Steel has continuously been an employer engaged in an industry affecting commerce under Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

**ADMINISTRATIVE PROCEDURES**

6.    More than thirty days prior to the institution of this lawsuit, Kyle Barnett filed a charge of discrimination with the Commission alleging violations of Title VII by Schuff Steel.

7.    On March 22, 2022, the Commission issued to Schuff Steel a Letter of Determination finding reasonable cause to believe that Schuff Steel had violated Title VII and inviting Schuff Steel to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

8.    On August 11, 2022, the Commission issued to Schuff Steel a Notice of Failure of Conciliation advising Schuff Steel that the Commission was unable to secure

from Schuff Steel a conciliation agreement acceptable to the Commission.

9.      All conditions precedent to the institution of this lawsuit have been fulfilled.

## FACTUAL ALLEGATIONS

10.     Kyle Barnett, an African American man, began working for Schuff Steel around December 9, 2013.

11.     Barnett and other African American aggrieved individuals were subjected to racial harassment by Travis Bell, plant manager at Schuff Steel's plant in Eloy, Arizona.

12.     Travis Bell is white.

13.     Travis Bell was the plant manager of the Schuff Steel plant in Eloy, Arizona from 2001 until approximately 2016, when he voluntarily resigned his position.

14.     Schuff rehired Bell as plant manager in 2017 and Bell continues to serve as manager of the Eloy plant.

15.     Travis Bell frequently and publicly referred to Barnett as "KFC." Barnett remembers Bell directly referring to him as "KFC" at least four times throughout his employment.

16.     On at least one occasion Bell used the term "monkey" to refer to Barnett and other African American employees.

17.     During a work meeting where Bell was present, Barnett complained about being called a monkey.

18.     After the meeting Bell told Barnett that Bell can say and do whatever he wants because Arizona is a right to work state.

19.     On at least two occasions Barnett and at least one other aggrieved individual witnessed Bell raise his fist in the air and shout "white power!"

20.     Bell also told at least one aggrieved individual, on at least one occasion, that black and brown people are pieces of shit and/or a shit ring around a toilet.

21.     Barnett also witnessed Bell harassing another African American employee, by calling him "rerun" in reference to an overweight African American television character.

22.     On several occasions, Bell would demand this same employee to dance and the employee would always comply. Some Schuff employees heard Bell call this employee a nigger.

23.     Barnett and the other African American aggrieved individuals were offended by Bell's anti-African American harassment, including but not limited to Bell's use of the terms monkey, KFC, nigger, and shouting "white power!"

24.     In or around April 2017, Barnett declined a promotion to be a lead worker because Barnett had observed that Bell treats lead workers worse than their subordinates.

25.     After Barnett declined the lead worker position, Bell threatened to terminate Barnett.

26.     In October 2018, Bell made comments such as stating that black people are content with staying down in life.

27.     In October 2018, Bell ordered Barnett to move to the second shift and told him that he no longer had a place for him on the first shift.

28. The second shift runs from approximately 5 p.m. until 3:30 a.m.

29. Barnett had worked the first (day) shift for the previous five years.

30. Barnett complained to human resources about being moved to second shift.

31. Barnett also complained to Bell directly about being moved to second shift.

32. Schuff Steel knew or should have known about the anti-African American harassment.

33. Because of the harassment, Barnett and at least one other African American aggrieved individual felt compelled to resign.

34. Bell also subjected other aggrieved individuals to unwelcome harassment based on their national origin, Hispanic.

35. Bell frequently used racial slurs such as spic and wetback, offensive nicknames such as "Home Depot," and ridiculed and berated Hispanic employees by, for example, calling them "fucking Mexicans."

36. One aggrieved individual who worked at Schuff Steel from 2017-2018 recalls hearing Bell use the term wetback several times per day in reference to Hispanic employees.

37. On another occasion Bell said to an aggrieved individual that if he owned the company, he would make it all white people and said that we don't need any "beaners."

38. Another aggrieved individual estimates that Bell called him a fucking Mexican several times per month in 2018-2019.

39.     Bell frequently, over a period of years, called one Hispanic aggrieved individual "Home Depot."

40.     Bell continues to call that aggrieved individual "Home Depot."

41.     Bell also berated Hispanic employees frequently for speaking Spanish at the workplace. On one occasion Bell told a Hispanic employee this is America and you need to speak English better or I'll fire your ass.

42.     Bell would also frequently shout comments such as English motherfucker, and  I don't speak that taco when employees spoke Spanish at work.

43.     One Hispanic aggrieved individual submitted his resignation with Schuff Steel's Human Resources department and explained that it was due to Bell's harassment.

44.     Bell overhead that aggrieved individual's conversation with HR and interrupted to say that no one will hire the employee because he can't speak English.

45.     Schuff Steel knew or should have known about the national origin harassment.

46.     Because of the harassment, other Hispanic aggrieved individuals felt compelled to resign.

47.     The Hispanic aggrieved individuals referenced in the above paragraphs were offended by Bell's national origin harassment, including but not limited to use of the terms spic, wetback, "Home Depot," and comments such as I don't speak that taco, and "fucking Mexican."

48.     Bell also retaliated against aggrieved individuals for engaging in activity

protected under Title VII.

49.    For example, in 2018 one aggrieved individual gave an interview to Schuff Steel's corporate Human Resources representatives who came to the Eloy plant, in which the aggrieved individual complained about national origin and race discrimination.

50.    In the interview he described Bell's racist and anti-Hispanic comments, including Bell's statement that black and brown people are pieces of shit.

51.    When that aggrieved individual left the meeting with Human Resources, Bell stared at him from across the plant.

52.     The following day that aggrieved individual was reassigned to the second shift.

53.    The second shift runs from approximately 5:00 p.m. to 3:30 a.m., and only has a small shift differential.

54.    Bell also retaliated against another African American aggrieved individual after they accused Bell of being a racist.

55.    The aggrieved individual was terminated shortly after accusing Bell of racism.

## STATEMENT OF CLAIMS

## FIRST CLAIM FOR RELIEF

## [Race-Based Hostile Work Environment –42 U.S.C. § 2000e-2(a)]

56.    The allegations in the foregoing paragraphs are hereby incorporated by reference.

57.     From 2013 through at least 2019, Schuff Steel subjected Kyle Barnett and other aggrieved individuals to unwelcome racial harassment constituting a hostile work environment. Bell's degrading comments and gestures included, but are not limited to, calling Barnett "KFC," referring to African American employees as monkeys, and pieces of shit. Bell also harassed African American employees by shouting "white power!" and raising his fist in the workplace.

58.     Schuff Steel knew or should have known about the racial harassment, but Schuff Steel failed to take prompt or effective action to prevent, correct, or remedy the hostile work environment.

59.     The effect of the practices complained of in the foregoing paragraphs has been to deprive Kyle Barnett and other African American aggrieved individuals of equal employment opportunities and otherwise adversely affected their status as employees because of their race.

60.     The unlawful employment practices complained of in the foregoing paragraphs were intentional.

61.     The unlawful employment practices complained of in the foregoing paragraphs were done with malice or reckless indifference to Barnett and other African American aggrieved individuals' federally protected rights.

## SECOND CLAIM FOR RELIEF

## [National Origin-Based Hostile Work Environment –42 U.S.C. § 2000e-2(a)]

62.     The allegations in the foregoing paragraphs are hereby incorporated by

reference.

63.     From 2013 through the present, Schuff Steel subjected Hispanic aggrieved individuals to unwelcome national origin-based harassment constituting a hostile work environment. Bell's degrading comments and gestures included, but are not limited to, calling Hispanic employees "spic," "wetback," and "Home Depot," as well as referring to Hispanic employees as fucking Mexican, telling Hispanic employees I don't speak that taco, and humiliating employees for their poor English language skills.

64.     Schuff Steel knew or should have known about the national origin-based harassment, but Schuff Steel failed to take prompt or effective action to prevent, correct, or remedy the hostile work environment.

65.     The effect of the practices complained of in the foregoing paragraphs has been to deprive the aggrieved individuals of equal employment opportunities and otherwise adversely affected their status as employees because of their national origin.

66.     The unlawful employment practices complained of in the foregoing paragraphs were intentional.

67.     The unlawful employment practices complained of in the foregoing paragraphs were done with malice or reckless indifference to the aggrieved individuals federally protected rights.

## THIRD CLAIM FOR RELIEF

### [Constructive Discharge– 42 U.S.C. § 2000e-2(a)]

68.    The allegations contained in the foregoing paragraphs are hereby incorporated by reference.

69.    Schuff Steel constructively discharged Barnett and other aggrieved individuals by subjecting them to egregious harassment based on race and national origin and taking no action to prevent, correct, or remedy the harassment.

70.    The harassment that Barnett and the other aggrieved individuals suffered, including unwelcome racial stereotypes, racial slurs, and racial epithets such as shouting "white power!" made the working conditions so difficult for Barnett and the aggrieved individuals that a reasonable person in their position would have felt compelled to resign.

71.    The effect of the practices complained of in the foregoing paragraphs has been to deprive Barnett and other aggrieved individuals of equal employment opportunities and otherwise adversely affected his status as an employee because of his race.

72.    The unlawful employment practices complained of in in the foregoing paragraphs were intentional.

73.    The unlawful employment practices complained of in the foregoing paragraphs were done with malice or with reckless indifference to the federally protected rights of Barnett and other aggrieved individuals.

**FOURTH CLAIM FOR RELIEF**

**[Retaliation-42 U.S.C. § 2000e-3(a)]**

74.    The allegations contained in the foregoing paragraphs are hereby incorporated by reference.

75.    Since at least 2018, Defendant has engaged in unlawful retaliatory employment practices in violation of Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a).

76.    At least one aggrieved individual opposed the discriminatory and harassing conduct based on race, and national origin by reporting or complaining to Defendant's managers and human resources department about Bell's harassing conduct.

77.    Defendant's retaliatory acts include, without limitation, discipline, reassignment to the second shift, and termination.

78.    The effect of the practices complained of above has been to deprive aggrieved individuals of equal employment opportunities and otherwise adversely affect their status as employees because they opposed unlawful employment practices.

79.    The unlawful retaliatory employment practices complained of above were intentional.

80.    The unlawful retaliatory employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of aggrieved individuals who were employees of Defendant.

**PRAYER FOR RELIEF**

Wherefore, the Commission respectfully requests that this Court:

A.      Grant a permanent injunction enjoining Schuff Steel, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from harassing individuals because of their race and/or national origin.

B.      Grant a permanent injunction enjoining Schuff Steel, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from retaliation against individuals for engaging in activity protected under Title VII.

C.      Order Schuff Steel to institute and carry out policies, practices, and programs which provide equal employment opportunities for all its employees which eradicate the effects of its past and present unlawful employment practices.

D.      Order Schuff Steel to make Kyle Barnett and other aggrieved individuals whole by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices.

E.      Order Schuff Steel to make whole Kyle Barnett and other aggrieved individuals by providing compensation for past and future pecuniary and non-pecuniary losses resulting from the unlawful employment practices described above, in amounts to be determined at trial.

F.      Order Schuff Steel to pay Kyle Barnett and other aggrieved individuals punitive damages for the malicious and reckless conduct described above, in amounts to

be determined at trial.

G.    Grant such further relief as the Court deems necessary and proper in the public interest.

H.    Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its complaint.

.

.

GWENDOLYN YOUNG REAMS
Acting General Counsel

MARY JO O'NEILL
Regional Attorney

/s/ *Michael Yeabsley*
MICHAEL YEABSLEY
Trial Attorney

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION

Phoenix District Office